Marrico Edward Spears and hear from Mr. Hughes first. I'm sorry I should have got to mention our colleague Pete Benavides was unable to be present but he is participating in the cases today and this week by telephone we have him tapped in right now and he you'll hear his voice if he wants to ask a question but he will be here and so we'll proceed with with him here on the telephone I mean. May it please the court counsel for the government my name is Craig Hughes and I represent the defendant appellant Marrico Edward Spears in this matter. In this case the district court erred when it denied Mr. Spears pretrial motion to suppress all evidence seized as a result of a non-consensual warrantless search of his vehicle. More particularly in making the determination that the search was constitutionally valid and did not violate Mr. Spears fourth amendment rights the district court found that there were two reasons that justified the stop of Mr. Spears vehicle. The first being that the officers witnessed a traffic violation making an unsafe lane change. The district court also found that in addition to witnessing the unsafe lane change the officers had reasonable suspicion to make a Terry stop based on observations of activities at a house located at 1251 New York Avenue in Fort Worth Texas. Now with respect to the traffic stop justification the the law is clear in the circuit that once all relevant computer checks are run on a suspect who has stopped and in the absence of any other reasonable suspicion that continued questioning past the point that the computer checks are clear constitute or is an unconstitutional prolonging of the detention. In this case I think it's important to note as evidenced by the videotape which is part of the record I believe that's ROA 134 that when officer Garrett Hall of the Fort Worth Police Department approached Mr. Spears vehicle initially he determined that he was from Oklahoma but there's two things he did not do that I think are critically important the analysis in this case. One, he did not ask Mr. Spears or mention anything about weapons. Didn't tell Mr. Spears that he had seen him moving around in the cab of the truck that he was making any type of furtive gestures. He made no mention of weapons whatsoever. This is during the initial encounter. Two, he did not ask Mr. Spears where he was from. As the tape shows he simply took Mr. Spears driver's license proof of insurance went back to his vehicle and performed the permissible computer check. Now I think it's also important to note that on the video while he's performing the computer check, Officer Hall, he can be heard communicating with other officers for a period I believe that it's approximately eight minutes and during that communication he makes no mention of having seen Mr. Spears moving around in the cab of the vehicle or that he has any concerns or fears that there may be a weapon as a result of those movements. You're trying to basically attack the factual findings of the district court that the officer had a fear that Spears had a gun and a number of other sort of inconsistencies you're trying to point out in the record and that's just a tough, tough avenue for relief because we have to find that any factual findings are clearly erroneous. Why isn't your best argument just that the stop even if okay at its inception since it lasted about 40 minutes was unreasonably long even taking the facts as the district court found them? Well the stop was unreasonably long for the reason that not only did the officer not have reasonable suspicion to prolong the stop, reasonable suspicion to suspect either that Mr. Spears was involved in drug trafficking activity or that he certainly the officers none of the officers had probable cause to search the vehicle which they did approximately 40 minutes into the encounter. Now if I may I'd like to... But even even if they ended up having probable cause at the end of that 40 minutes because the other the guy whose house it was was stopped and they found all that incriminating evidence I mean you still have the argument that the interim period those 40 minutes the stop might be okay the search given what they finally figured out might be okay but that 40 minutes it seems to me your best argument is that that 40 minutes was unreasonably prolonged without any basis. Well and there was no basis your honor I anticipate that the government will argue that that 40 minutes was to to bring the canine out to the unit and as I know the court is aware there was testimony that efforts were being made but... What does the record say about whether I mean our cases say if you call and they say okay we're gonna send a canine out it might take 25 minutes because it's a busy night that's reasonable because you know the cops are doing the best they can and it takes time to get the dog out there but what was the record evidence on whether a dog was on its way or not? I think the only record evidence was officer Hull's testimony that he knew that a dog was on the way based on his conversations with the other officers I believe that officer Crum testified as well that efforts were being made to get a dog from various agencies in the Dallas Fort Worth area they were attending to contact some of the mid cities agencies but as far as and Judge O'Connor by the way at the end of the suppression hearing obviously had some concerns about those efforts he asked questions of the attorney for the government you know what efforts were being made and he was curious as to why Kevin Brown who was one of the officers who was on the scene involved in trying to get the dog why he wasn't called to testify but to answer your question I think the record is somewhat vague as to the efforts being made by law enforcement to bring the dog out and I certainly don't think there's anything in the record giving an approximation of time when the dog might arrive or anything in the record that a specific agency. Mr. Spears did ask us to talk to a superior officer or something. He did. Didn't that take some time? It did take some time. My position with respect to that issue is that whether he had to speak to a supervisor or not which he clearly did that did not have the effect of prolonging the detention because the officers were going to wait for the dog anyway and so whether he asked for a supervisor to come or not the officer it's clear from the record they were waiting for the dog to get there and of course they short-circuited that process once the $30,000 was discovered on the floorboard of Mr. Loera's vehicle and with respect to that discovery at the testimony at during the suppression hearing in the trial I think it's pretty clear that that was the precipitating factor when the officers felt that at that point you know what now we have probable cause we don't need to wait for the dog let's call the dog off. With respect to that discovery defendant would submit that there was nothing tying the discovery of that $30,000 to Mr. Spears. When Mr. Spears is at the house on New York Avenue he's not seen conversing with Mr. Loera or with anyone for that matter. He's not seen taking anything to the back of the house. He's not seen coming out of the front of the house and most importantly at the scene Mr. Loera makes no statements to the officers implicating Mr. Spears with respect to the discovery of that $30,000. Now in the Zavala case that my co-counsel relied heavily upon in the written motion to suppress and during the suppression hearing in that case the the the gentleman who was Mr. I believe that's Mr. I'm drawing a blank on the name he did make a statement to the officers that Mr. Zavala had been involved in a drug transaction with him. He told them that and this court found that it was only after that that I was Mr. Moreno I could be mistaken that after he made that statement that's when they had probable cause to search Mr. Zavala but in this case Mr. Loera did not implicate Mr. Spears. So I met a loss I think and I think the court is at a loss to explain why that at that point probable cause was realized. The vehicle even prior to the discovery of the $30,000 in Mr. Loera's vehicle and I believe that the district courts factual findings were that probable cause to search the vehicle existed at the time it was stopped simply based on the observations at 1251 New York Avenue. Now the district court also relied upon a Michigan versus Long theory to justify the search that officer Hall had a suspicion that Mr. Spears was perhaps armed and that he possibly had immediate access to a weapon. The district court relied heavily on Mr. Spears alleged furtive gestures towards the console of the vehicle. In doing so the district court cited I believe it was four cases out of this circuit dealing with furtive gestures none of which are particularly relevant or particularly applicable. For instance the district court relied upon US versus Watson. That was a case where 3 30 in the morning here in Jefferson Parish deputies see a vehicle pull into a parking lot of a closed business in a high drug trapping area. The vehicle turns the lights off, the cars turned off. When the deputies approach, they see Mr Watson making suspicious movements as if he's trying to conceal something under the seat. They then approach and see that the steering column is cracked, indicating the vehicle is perhaps stolen. But most of the time it was a pistol protruding from under the front seat and only after that did they conduct a Michigan versus Long search of the car. Obviously that's not what we have here. No weapons were seen in Mr. Spears vehicle. No drugs were seen in Mr. Spears vehicle by officer Hall. The Collin case was another case relied upon by the district court. Again a nighttime stop involving suspicious movements, a passenger stooping down, moving from side to side. Well, that passenger is removed. He's frisked. Shotgun shells are found in his pocket. After the shotgun shells were found a barrel of a sold off shotgun is seen protruding from under the seat again. Those facts don't apply to this case, and any reliance upon Colin is misplaced. The district court cited the wall in case another once again nighttime stop where, when the officer approached the vehicle, he saw rifles inside the vehicle upon his initial approach. Numerous other other weapons. And in fact, Mr. Wallen told him that he was transporting weapons from a firing range. The only whole thing with officer safety that doesn't make a lot of sense to me about this case, the officer safety issue typically comes up. You go and approach the driver at the inception of the stop. The officer understandably has a safety interest there and says, Look, right before I start talking to you and interacting with you, I want to make sure there's no weapon around in your vicinity. So that's the, and I think most of these cases you're talking about are that type of situation. But here, you know, 20, 30 minutes into the stop, we start getting worried about weapons. Why does that matter? Because if the officers are truly worried about their safety, let them go. If you have no reason to stop them. I mean, he's only there that long because the officers, you know, think they want to further their drug investigation. So the officer safety rationale doesn't make a lot of sense to me at the 20th or 30th minute of a stop when the guy's only there because the officers want him there. So if they're really worried about the safety that he's going to use a gun on him, let him go. Well, that's correct. And again, I think it's important to point out that at no time during the initial encounter while he's back in his officer Hall's patrol vehicle, does he mention anything to anyone that he's concerned? Now, I understand that it's an objective test. It's not whether or not the officer had an actual fear of a weapon. But even applying the objective test in this case, we're on the side of a heavily traveled freeway in the Dallas-Fort Worth area in the middle of the day. It's not a nighttime stop as the other cases that we discussed. In order to justify a detention ultimately leading to a Michigan versus Long protective search, there has to be some reasonable fear that the subject possesses a weapon. But even if there was that reasonable fear, I guess my point is they could have done a weapon sweep at minute one of the stop, even minute 10, even minute 20. I'm not sure how the weapons fear justifies a 40 minutes search. I mean, officers every day pull people over. They search for weapons within a few minutes on that. I just don't see how that justifies the duration of the stop. Well, that's correct. In this case, I believe that if the court found that the officers would have been justified pursuant to Michigan versus Long to conduct a protective sweep of the vehicle, that's really lowering the bar on the Fourth Amendment in terms of interactions between drivers and officers. An officer simply comes in and states that he saw some type of movement towards a console and that that gave him fear. Now, in this case, the district court said there was more than just the movement towards the console. There was the information that Officer Hall had about Mr Spears prior to the stop. That information was simply we want you to stop a car. We want you to observe a violation and stop a car in connection with an There's no information imparted to Officer Hall that he's been seen leaving a house where a drug deal took place that he suspected of carrying a large amount of contraband, large amount of cash. There's no information given to Officer Hall at that point that would lead a reasonable person to necessarily fear that he's in possession of a weapon. The other. The third factor that the district court pointed to is Mr Spears refusal to obey unlawful commands. And while it's true that initially he did not step out of the vehicle when asked to by Officer Hall. Once Officer Hall had Officer Sones come to the scene, Officer Hall testified that he actually pulled Mr Spears out of the vehicle that Mr Spears complied. I think the videotape will actually show at that point Mr Spears put his hands up and walked to the back of his truck. Uh, that that Officer Hall testified that Mr Spears was not aggressive, that he wasn't belligerent. So while it may be true that he disregarded the order to get out of the truck may have been somewhat resistant to the order to get into the back of Officer Hall's vehicle. He didn't do so in an aggressive or threatening manner. Had he done so, I think that might have been a reason to cause the officer to have a fear of the weapon. But a view of the videotape will show that Mr Spears just wanted to leave. He wanted to get out of there. He's very clear. I'm here to buy some auto parts. I'd like to get back to Tulsa where I have my auto part business. And I see that my time is about to expire. Thank you, sir. Have some time on rebuttal. Miss Larson. May it please the court counsel Nancy Larson on behalf of the United States. This is a case that involved a long term drug investigation by the D. A. Task force. The investigators in this case knew that Horatio Loera was a drug from his place of business in January of 2013. They continued surveillance on this man in May. They also learned that there were that there was more drug activity at his residence. There were two. There was surveillance on one day in May. There were two subsequent days in May where associates of Horatio Loera had sold drugs to C. I. S. For the D. A. Task force. Then in October, I undercover who purchased drugs from someone at that from someone associated with that address. 12 51 New York. Then a C. I. Made an arrangement on January 15th, 2014 to buy narcotics from a person who then went to 12 51 New York Avenue to get the drugs. When the C. I. Didn't hear from the person who was selling the drugs that he couldn't reach his supplier. His supplier wasn't home. The officers were watching that house at that time, and they saw the drug supplier go and knock on that door, go to a nearby gas station and come back. So the officers decided that they would come and sit on that house the next day, thinking that that transaction was gonna be consummated or even perhaps it was reasonable to conclude that the supply might arrive on that even let's assume that the district court is correct that there are two reasons for reasonable suspicion. We're not talking about probable cause, but reasonable suspicion. One was the traffic stop allows him to stop him and to that there's reasonable suspicion that he is, uh, involved in maybe involved in some kind of drug, and I'm not talking about probable cause at this time. The traditional Terry stop situation comes from a suspicious circumstance near areas where there's, uh, uh, jewelry staff stores and whatever. And so you have a Terry stop because you've got a suspicion about this person in this crime area. Uh, and you can stop him and ask him what his name is and, uh, do stuff to allay your fears. Uh, the policeman's fears that, uh, that he is involved in some kind of suspicion, suspicious activity, and then that may go into fruition and create probable cause. Uh, what? Assuming that we're here, we have a kind of like the, uh, serious crime area have a place where drugs have been used before. Do they know that they have drugs have been bought there? The person shows up under, uh, suspicious circumstances. They don't see him load anything, but they know that this is house is being used, uh, for marijuana. And I know people are loading up and I know somebody has bought their something there the day before, and maybe there's not probable cause, but there's reasonable suspicion to think that based on these circumstances, uh, uh, this, uh, suspicious activity in a drug area. Uh, and they stop him. What reasonable efforts are things that you say are reasonable efforts to dispel the notion that he's involved in kind of drug thing? And why did it take so long if we, uh, import, uh, the rights that the police have on it on a Terry stop or reasonable, suspicious stop? Uh, what reasonable steps were made within reasonable time to dispel? And, uh, is the canine search? What is the case law? What do you What's your argument with respect that there is if there is reasonable suspicion that that would include the right to to delay it while they get a dog? Thank you, Your Honor. There's there's a lot there. So let me try to unpack that. First of all, the fact that the police were being cautious, um, the fact that the government believes that the police could have gone right into that car and searched it for potential weapons. I don't believe it. But go ahead. Try to limit yourself to the idea that they have reasonable suspicion both to stop him, obviously, for the traffic violation, but also because he's a suspicious person. And, uh, no probable cause. But but but because they're reasonably suspects criminal activity because he's been to this place has been criminal activity there. He's been there under suspicious circumstances. So he's kind of like Terry. What? Start from there. Yes, Your Honor. I believe that the police officer, Officer Hall could have, um, searched the car, done a cursory search of that car initially when he pulled over because of all of the factors that the court mentioned about the prior drug sales. The out of state Mr Spears having out of state license. As soon as he leaves within five minutes or so, another out of state car of red Lexus pulls up. The police are in constant communication. They're observing. These people put some sort of bag in the trunk of the car from the known drug dealer's house. Judge Benavides. And I think it might be a little difficult to hear him. He was saying, Assume he assumed there wasn't probable cause to search from the outset. Then what? And it was just a reasonable suspicion. Stop. Then what were the police doing to digitally investigate this answer, Your Honor? Because this is a very dynamic situation. At first, if you listen to the radio calls in this case, the intention is really just to stop and identify because this is an ongoing investigation. And though the police may have reasonable suspicion and may have probable cause, they don't always act on it because they don't want to compromise the integrity of the investigation. So that's the first part of it. But why didn't I ask? Did you go to this house? Uh, uh, where were you? Do you? Uh, did you approach this house? Did you drive up to this house? What? In other words, what? What did they do that suggests that they were trying to get his identity and get information, uh, about, uh, the criminal activity as opposed to just prolonging, uh, the detention and and if they were prolonging it, are they authorized? Was does reasonable suspicion allow them to prolong it until they get the canine? Yes, Your Honor. I believe it does. And the backdrop of all of this is that the police were trying to decide what to do. Objectively, they could have searched that car, but they were worried about their long term investigation, and they did not want to arrest Mr Spears or start questioning him until they could until they could sort out what was going on at Mr Loera's house because he was, as far as they knew the target of their investigation. So this is a very dynamic situation with cars coming and going with squad cars parked all over the place. I'm trying. What authority says you can prolong a traffic stop, which is a seizure into the Fourth Amendment to protect the integrity of your investigation? I'm not diminishing that interest, but I don't. I didn't know that it justifies a lengthy delay on that ground. Is any authority say that from our court? Well, I believe that that it certainly could be justified for the police officers to to wait and try to get more information before they do a search. Even though they objectively have reasonable suspicion, they don't have to act on that. They can. But reasonable suspicion doesn't support a search of the car. You need probable cause. Well, they can get to a protective sweep for weapons, but you need probable cause for a full car search, don't you? Well, for a full car search, you do. But I do believe under Michigan versus long, if there is reasonable reason to believe there's contraband or a weapon, one can search the car. And, um, there there was a money counter on the back seat. There was a counterfeit money detector that they didn't realize until about 40 minutes into the stop, though. So how does that justify the length of the stop? Well, Officer Hall testified that he did see the backpack, the backpack that was in the back seat, and that was communicated to, um, task force officer crumb. Eso it was plainly visible. But my point is that had they gone in there, they would have seen that they would have seen that they would have seen the counterfeit money detector. And all of this exists in objective reality. And so what they're trying to do is dispel or confirm they have reasonable suspicion, but they're trying to dispel or confirm based on what's going on in the rest of the investigation. I don't think that we can isolate the exact stop of Mr Spears when these officers are working in tandem on a much larger picture, searching, trying to stop. How long could they awaited? How many hours could they have waited till something else broke in the investigation? I do three hours with him on the side of the road, and it seems to me that you're saying basically until until something else in the investigation broke with with Luara. But, Your Honor, in this case, the next car came within five minutes left very shortly after that. They saw the loading of something that they thought was very suspicious and could be narcotics in that car. They immediately went after that car. Then, when Mr Loera pulled out, they immediately went after him. So really, the touchstone of this is are the police diligently acting? And in this case, the question is the question whether there are investigating the other crime, the other person, or is the question what are they? Is there? What is their investigation of this particular defendant? What are they doing to dispel or confirm their stopping? Because we assume here my question assumes that they had a reasonable basis to think that he was involved. They didn't have probable cause, but that reasonable basis to think that he was involved in some kind of criminal activity involving drugs. What are they doing to dispel or find or confirm that with respect to the particular defendant here? Yes, Your Honor. Well, the government's position is that we would ask the look at the totality of the circumstances and not this isolated stop of Mr Spears. But the government will point out that the police were acting expeditiously with Mr Spears. He was stopped. He was briefly asked about his comings and goings. Then the officer went, and it took a number of minutes to get the check done in the squad car. Now, when he came and he lied about that, he lied about worried. Well, right. And one thing that the clear and certainly in defense of the district court is that there has been some question about at what point Mr Spears told a lie about visiting his family member. But there was no real parsing this out by the defense in the trial court. As a matter of fact, Mr Sweeney asked Officer Hull, um, when you approach the vehicle and started asking questions like where he had been or what he was doing around here, or is this is dually things like that. Is that correct? Yes, Officer Hull. And did he tell you that he had been checking on a family member and that he was on his way to Carrollton? And Officer Hull said yes. So, you know, the defense sort of conflated what was going on during that conversation. They did not make a distinction between the first encounter, the get the records check, the going back and the asking further questions. And rightfully so, because this situation is not one that depends on parsing the questions. So, Mr Spears, um, eventually, um, the officer had seen him rummaging around. The officer does not have to act right away. Um, this court's decision in Wallen basically says that the ability to do the protective sweep extends all the way into the end. The officer does not have to let somebody drive off without having searched. Where was he when they did the sweep? I thought he was back either in the back seat or back with the police. Yes, he was in the back seat of the car and Officer Hall because of the ongoing investigation, Officer Hull did not even check the console. He was waiting for instructions from narcotics because of the ongoing investigation. But in order to give the court some perspective here on the when when the questioning stopped at about eight minutes on the time stamp 7 47 between 7 47 and 15 minutes before Mr Spears got out of the car, there was questioning. Mr Spears refused to get out of the car for a pat down. They had to wait for a backup officer to arrive because Officer Hall did not want to take this on by himself. He finally extracts Mr Spears from the car at time stamp 15 minutes. Then there's a little resistance during the pat down. Then from about 16.5 minutes to over 18 minutes on the time stamp, they're trying to get Mr Spears in the squad car and he is very argumentative. So about 19 minutes on the time stamp, Mr Spears is in there and they're talking about you can hear Officer Hall talking about having called the canine and waiting for the canine. So we're 20 minutes in on the time stamp at this. Let's talk about the canine because our case law does say if you call and they say, well, they'll be there in 30 minutes that under most circumstances that's going to be reasonable. But my reading of the record and I'm looking at 7 83. This is holes testimony at the suppression hearing. Did you tell the canine to step it up? Did somebody get on the radio? No, we were unable to locate a canine that was available. Then the record at 9 88 again, the same officer. No, we've already tried everywhere. All the other cities. We were unable to locate one. So if they were unsuccessful and there was no canine on the way, what I'll ask, what was the reason they were? What were they waiting for? Well, they were waiting for a canine, but they were also waiting to see was one on the way or not. I don't believe one was on the way. I don't see anything. The rector suggested on the way, though. I wasn't that quite a bit different than cases where one's on the way and you know there's an end point in sight versus just indefinite. We've called every canine unit in the city, not one's coming. I mean, I think if that's all you've got, it would be more significant. But we have the Lexus stopped, and we eventually have the Range Rover stopped. And we are. We are searching those cars for the contraband for contraband, and it is related to Mr Spears case. What case is their case? Well, that says you can continue to hold someone on a traffic stop because there's a another traffic stop somewhere else going on that could produce incriminating information. I'm not. I am not familiar with one that says exactly that, but I am familiar with the case law that says as long as the police are working diligently to confirm or dispel the reasonable suspicion about this defendant, which is what they were doing, and they were acting diligently because they had squad cars lined up and ready to go and they and we're at minute 19. By the time we get him in the car, he also wants a sergeant to come. Okay, so there's time when we're gonna have to wait. He's mad, but the sergeant comes and you still continue holding him. So how can I agree? He was complaining. He says I want a sergeant. Um, and if you waited for that and then let him go, that makes sense that that was the reason you were holding him. But how can calling for the surgeon be the reason for the length of the stop when you kept holding him after that was all taken care of? Well, I think it it lessens his argument that the whole stop was contributed, was attributable to the police waiting for the canine that that because of his behavior and because of his request, some of that time could be attributed to him in terms of how much of that clock was eaten up. But at a certain point, the canines not coming. They can't get a living anything of canine, and they know it's not coming. So I don't see how how you at that point. I don't see how you could. You can say, Well, any further waiting for something that's not gonna happen is reasonable. We did not know that the canine was not coming. Um, there was confirmation. I thought the guy said we couldn't find one. Well, no, one never. What we have we have. We have the police dispatcher authorizing the canine trying to find a canine. We also have the task force still trying to do it. So we're at 19 minutes by the time we get him secured in the car. Well, Officer Hall then does a cursory look for the next few minutes, just sort of in the passenger seat of the car. Of course, you know the backpacks there, but you don't start the clock at 19 minutes. Do you? Hadn't they already made efforts to try to get a canine before they got him back in the car? Do they wait till they got him back in the car before they asked for a canine? I believe they started the efforts before that. I can't point to a record site because this was not really a huge subject of inquiry in the district court. I mean, there were some questions about what did you? Did you call for a canine? But there's a suppression. I mean, there was obviously suppression here, and it's the government's burden. What the government showed was that there was this investigation on the totality of the circumstances, trying to dispel or confirm reasonable suspicion through stopping these cars, plus also having a canine coming. So trying to get a canine, narcotics trying to get a canine, Fort Worth PD trying to get a canine, they're working diligently to do this, and a 40-minute stop is certainly not beyond the pale. The district court had cited United States versus PAC, which was 35 minutes. You know, yes, a canine was on the way, and there was 35 minutes, but we, the government, really believes that it got probable cause before they could ascertain the canine. So this . . . Well, your contention is, and the district court found, that there was probable cause from the beginning, but I know you're low on time. Let me just ask you about that. I mean, you have, I'll give you, you have all the PC in the world against Loera, whose house it was, but all you have on Spears is he pulls up his pickup truck with Oklahoma plates. For about 10 to 20 minutes, the pickup truck is at the house. They can't really see what's going on, and you're saying someone driving their pickup truck for 10 to 20 minutes, keeping it parked there at a place, a known drug location, that that gives not just reasonable suspicion, but probable cause? Because probable cause is enough to arrest someone. So you're taking that to a judge and said, I want an arrest warrant for this guy, because for 10 or 20 minutes, he parked his car at a known drug location. You think the Department of Justice could have gotten an arrest warrant based on that? Well, let me take the district court's position on that, Your Honor. He says you could have. I'll give you that. Which is that Mr. Spears came with his . . . if I may, get the red lights on. Mr. Spears came, and he stayed a very short time with his out-of-state plates. Then another car came. This investigation had been going on for a year, with people coming and going out of that house. And the one the night before, the guy, you know . . . Yeah, but you don't know whether he's a service . . . whether he's a TV repairman, whether he's there to check the electric box, whether he's a relative of the owner, whether he's the owner, whether . . . you don't know anything other than he drives up there. That's why we had Terry. Terry could have said, well, there's probable cause and suspicious circumstances. Here, there's a high crime rate. There's robberies. These jewelry stores are being robbed all the time. We'll just call it probable cause. They didn't. They said there's reasonable suspicion and that they can detain him to ascertain his identity and to allay their fears that he's involved. I just don't see where you get probable cause because you drive up there, you know? Your theory would be anyone who had their car there for 10 minutes over this period it was being surveilled could have been arrested. That's your theory. I'm going to go . . . That's not going to apply. That's not going to apply. If I may, if I may, Your Honor, the government does not have to disprove that Mr. Spears could have been a repairman. It just has to be a likely scenario that he was involved in the narcotics activity. So is the Department of Justice's position that anyone who parked their car there could have been arrested? No, Your Honor. It's not. But what was different about Spears parking his truck there? Because we cannot look at it in isolation, Your Honor. But that would be true of anyone who parked their car there. It wouldn't be in isolation. You'd have to look at the totality and how bad Loera is. But the court just said the totality is not isolation because of what had been happening the previous year, what happened the night before, Mr. Spears coming in his truck, the red Lexus coming, the furtive gestures in the car, the rummaging in the console, all of that put together does rise to the level of probable cause. I think the district judge decided that correctly. But I do think that there was enough reasonable suspicion to wait for the confirmation or the dispelling of the suspicion by searching those cars and or waiting for the dogs. I think that the police were acting diligently, and 40 minutes is not out of bounds on a traffic stop. If there are no further questions, the government would rest on its briefs. Thank you, Your Honor. Thank you, Ms. Larson. Mr. Hughes, you have a question. And may it please the Court, unless there are any further questions, I have nothing else to present. Thank you, sir. Thank you. The case is submitted.